PEOPLE v KLINE

Docket No. 51310. Submitted May 5, 1981, at Detroit.—Decided March 2, 1982.

Donald Kline was convicted, on his plea of guilty, of armed robbery, Recorder's Court of Detroit, Evelyn K. Cooper, J. Defendant appeals, alleging that evidence seized without a warrant should have been suppressed, that the trial judge impermissibly participated in the plea negotiations, and that the defendant was denied effective assistance of counsel when his attorney made no effort to investigate the defendant's competence to stand trial even though counsel was aware of a basis for a claim of incompetency. *Held:*

1. The defendant's guilty plea waives the issue of the validity of the search and seizure.

2. Participation of the court in plea negotiations is discouraged, but reversal is not required on this basis because such participation is not expressly prohibited by court rule, statute, or Supreme Court ruling.

3. The case is remanded for appointment of new counsel and an evaluation of the defendant's competency.

Remanded.

1. CRIMINAL LAW — EVIDENCE — GUILTY PLEAS.

The issue of whether evidence against a defendant was obtained by means of an unlawful search and seizure is waived where the defendant pleads guilty to the offense charged.

2. CRIMINAL LAW — JUDGE'S PARTICIPATION IN PLEA NEGOTIATIONS — GUILTY PLEAS.

A trial judge should not be a participant in plea negotiations, but such participation is not grounds for reversal of a defendant's plea-based conviction because it is not expressly prohibited by court rule, statute, or Supreme Court ruling.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 473.
[2] 21 Am Jur 2d, Criminal Law § 483.
[3] 21 Am Jur 2d, Criminal Law § 470.

3. CRIMINAL LAW — GUILTY PLEAS — COMPETENCE OF DEFENDANT.
    A defendant must be mentally competent in order to tender a
    valid guilty plea.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *David G. Edick,* Assistant Prosecuting Attorney, for the people.

*Ronald A. Molter,* for defendant on appeal.

Before: BASHARA, P.J., and N. J. KAUFMAN and J. L. BANKS,* JJ.

J. L. BANKS, J. This case raises a number of issues surrounding the defendant's plea of guilty to armed robbery.

First, defendant argues that the trial court erred when it did not suppress evidence seized at the time defendant and others were arrested. Defendant was arrested on the anonymous tip of a citizen shortly after the armed robbery of a clothing store in the City of Detroit. Based only on the citizen's tip, the police went to 15876 Santa Rosa, announced their presence and broke into the residence when they heard movement inside. Evidence then seized connected the defendant and others with the armed robbery. The trial court refused to suppress evidence seized without a warrant on the basis that the officers were in "hot pursuit". We disagree. *Payton v New York,* 445 US 573, 589-590; 100 S Ct 1371; 63 L Ed 2d 639 (1980), *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), *People v Casey,* 102 Mich App 595, 599; 302 NW2d 248 (1980), *aff'd* 411 Mich 179; 305 NW2d 247 (1981), *People v Strelow,* 96 Mich App 182,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

190-192; 292 NW2d 517 (1980). However, because defendant pled guilty, we find the unlawful search and seizure issue waived. *Tollett v Henderson,* 411 US 258, 267; 93 S Ct 1602; 36 L Ed 2d 235 (1973).

The second issue concerns the extent to which a trial judge should participate in plea and sentence negotiations. The record herein shows that, in the plea-taking process, the trial judge cross-examined the defendant at length and actively bargained with him from the bench.[1] It is apparent that it

---

[1] "*The Court:* File · Number 79-07236, The People of the State of Michigan versus Donald Kline; the charge, robbery armed. It carries a maximum sentence of life, and there is no reduced plea by the prosecutor's office. There was also no sentence recommendation by the prosecutor's office, because there was no reduced plea.

"Mr. Metz, are you going to stand in for Mr. Agacinski.

"*Mr. Metz [Assistant Prosecuting Attorney]:* The court has directly stated what the prosecutor has offered, and also we have not engaged in any way in sentence bargaining.

"*The Court:* The court has talked with Mr. Nelson on behalf of Mr. Kline. I've indicated that I would sentence him to no more than three to fifteen years, and I would recommend a training unit, and that was the extent of the agreement as to the court as to the sentence agreement. Is that correct, Mr. Nelson?

"*Mr. Nelson [defense counsel]:* That's correct.

\* \* \*

"*The Court:* Mr. Kline, do you understand the charge against you is robbery armed, which carries a maximum of life imprisonment?

"*The Defendant:* Yes, ma'am.

"*The Court:* And I've indicated to your attorney if I accept your guilty plea, I will sentence you to no more than three to fifteen years; do you understand that, sir?

"*The Defendant:* Yes, ma'am.

"*The Court:* But I could sentence you to life; do you understand that?

"*The Defendant:* Yes.

"*The Court:* Has anyone forced you to plead guilty?

"*The Defendant:* No, ma'am.

"*The Court:* Has anyone told you I'd be lenient in order to get you to plead guilty other than what I've told you?

"*The Defendant:* No, ma'am.

"*The Court:* Are you pleading guilty because you are guilty?

"*The Defendant:* Yes, ma'am.

"*The Court:* Is this plea being offered freely, voluntarily and understandingly by you without any undue influence, compulsion or duress, and also without any promises of leniency by the court?

*"The Defendant:* Yes, ma'am.

\* \* \*

*"Mr. Metz:* May we approach the bench for a minute, your Honor.

*"Mr. Nelson:* Wait a minute. I think Mr. Metz has raised the issue that he feels that there is not a sufficient factual basis regarding the use of a device to make one believe a handgun was used. I would ask that the court as an offer of proof read the examination transcript, which indicates that one of his confederates did hold a pair of pants over his hand in such a manner as to lead one to believe there was—that he did have a gun and he was armed and did state something such as 'give me all your money or I'm going to blow your head off', this type of thing, and I think that the court—

*"The Court:* Well, I did read that, but—

*"Mr. Nelson:* At the motion, the court read the transcript.

*"The Court:* I know what's in there, but I think the problem lies with Mr. Metz. I guess he's trying to show that this defendant knew or heard those words uttered.

*"Mr. Metz:* My belief, your Honor, would be this defendant would have had to have this specific intent and not just larceny, but an armed robbery.

"Did you discuss it ahead of time or at the time the actions occurred, whether he knew it and continued the criminal enterprise. That would be sufficient also. I have a question under the circumstances.

*"Mr. Nelson:* Pardon me, it's my understanding of the law that an aider and abettor, if one abets, the intent is there. The intent is passed over and that's in essence what we have there, that intent of the one gentleman that had used his hand in such a manner to lead one to believe that he was armed with a weapon. That intent is transferred over to Mr. Kline. I personally don't see—

*"The Court:* Mr. Kline, let me ask you this to see if I can clear this up.

"This matter was discussed between you and the other persons. Now when you discussed this between you and the other persons, not giving any names of any persons, when you discussed this, did you discuss that you were going to go over there and you were going to take the suits and whatever you could get together in there and robbing them. This was discussed, was it not?

*"Defendant:* Yes.

*"The Court:* Is that correct?

*"Defendant:* Yes.

*"The Court:* Now you said you discussed that you were going in there to 'strongarm' them?

*"Defendant:* Yes.

*"The Court:* When you say 'strongarm', in other words, some type—you were going in there and going to frighten the people so you could get the suits and everything?

*"Defendant:* Yeah.

*"The Court:* You weren't just going to get things and walk out the door?

was the judge who negotiated the plea and the sentence in this case.

While it is true that the court rule, GCR 1963, 785.7(2)(a), (b) and (4)(b), does not expressly prohibit a trial judge from entering into plea negotiations, the better rule is, we feel, embodied in FR Crim P 11(e).[2] See *United States v Werker,* 535 F2d 198 (CA 2, 1976), and *Griffith v Wyrick,* 527 F2d 109 (CA 8, 1975). We also agree with thoughts expressed by Judge KELLY in *People v Mathis,* 92 Mich App 670, 674-675; 285 NW2d 414 (1979), and

"*Defendant:* No, ma'am.

"*The Court:* Okay. Now in your planning of this, and you've got to be truthful, because if you did not commit this offense you'll have to go to trial.

"In planning this did you plan that somebody or one of the persons would act like they had some type of weapon to frighten the people so that they could—so that they would give up the merchandise?

"*The Defendant:* Yeah.

"*The Court:* So in other words, it was your plan for somebody to go in there to rob and to act like they had a weapon and somebody was going to act like they had a weapon even though they didn't?

"*Defendant:* Right.

"*The Court:* In other words, you planned the robbery armed, even though there was not a weapon; but somebody planned to act like they had a weapon?

"*Defendant:* Yeah.

"*The Court:* Okay, Mr. Metz?

"*Mr. Metz:* Thank you, your Honor. I have nothing further."

[2] "(e) Plea Agreement Procedure.

"(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

"(A) move for dismissal of other charges; or

"(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

"(C) agree that a specific sentence is the appropriate disposition of the case.

"*The Court shall not participate in any such discussions.*" (Emphasis added.)

*People v Bennett,* 84 Mich App 408, 413-414; 269 NW2d 618 (1978), that the trial judge "should be called upon in open court to approve the plea bargain reached by the adversaries, but should not be the instigator of, nor the conduit for, negotiations". *Mathis, supra,* 675.

However, although the trial judge acted imprudently by participating in plea and sentence negotiations, we decline to reverse on that ground since such participation is not expressly prohibited by court rule, statute or Supreme Court ruling. We would instead urge that the Supreme Court consider the amendment of GCR 1963, 785 to expressly prohibit such plea and sentence negotiations.

Finally, we observe that trial counsel and the trial court had before them substantial evidence that, at the time of the plea, defendant's mental capacity was in question. Because a defendant must be competent in order to plead guilty, *People v Matheson,* 70 Mich App 172; 245 NW2d 551 (1976), we remand to the trial court and direct that new counsel, other than the attorney who represented the defendant in the plea proceedings, be appointed. We further direct that the trial court commit the defendant to the Center for Forensic Psychiatry for an evaluation of competency.

Remanded.